UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> vs. ) <br> ) <br> PATRICK EMEKA IFEDIBA; NGOZI ) <br> JUSTINA OZULIGBO; ) <br> ) <br> **Defendants.** ) | CASE NO. 2:18-CR-0103-RDP-JEO |

## MEMORANDUM OPINION

The court previously granted the Government's Motion in Limine (Doc. 72) to Exclude Cultural Defense Evidence. (Doc. 103.) This Memorandum Opinion supplements the court's reasons for granting the motion, in addition to the reasons stated at the pretrial conference on February 5, 2019. (Doc. 103.). It also explains that the government's motion is granted without prejudice to Defendant Justina Ngozi Ozuligbo's[1] right to ask the court to revisit its ruling should she decide to testify.

> In general, the term "in limine" "refer[s] to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). A ruling on evidence in limine "aid[s] the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. [It] also may save the parties time, effort and cost in preparing and presenting their cases." *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, No. CIV. A. 99-D-880-E, 2001 WL 617521, *1 (M.D. Ala. Feb. 20, 2001)(internal citations and quotations omitted). Nevertheless, "it is the better practice to wait until trial to rule on objections when admissibility

---

[1] The Indictment names defendant as "Ngozi Justina Ozuligbo"; however the parties refer to her as "Justine Ngozi Ozuligbo."

upon what facts may be developed there. Thus, the motion in limine is an effective approach only if the evidence at issue is clearly inadmissible." *Id*. (citations omitted).

*Murphy v. Precise*, No. 1:16-CV-0143-SLB-DAB, 2017 WL 6002581, *1 (M.D. Ala. Dec. 1, 2017).

The Indictment charges that Ozuligbo was a knowing and willful member of a conspiracy to commit health care fraud in violation of 18 U.S.C. § 1347. "The object of the conspiracy was to maximize personal financial gain by defrauding health care benefit programs, including Medicare and Private Insurers, of money, to which the defendants were not entitled, for fraudulent and medically unnecessary allergy services and procedures." (Doc. 1 at 13.) For her part, Ozuligbo is alleged to have "administer[ed] and caus[ed] to be administered, allergen immunotherapy to pre-selected allergy patients for whom the treatment was not medically indicated," and to have "knowingly and willfully record[ed], and caus[ed] to be recorded, false patient records, including false symptoms, false test results, and false treatments." (*Id*. at 15-16.) The Indictment also charges that Ozuligbo submitted "false and fraudulent claims" to Medicare and Private Insurers for the allergen immunotherapy, (*id*. at 20), and engaged in money laundering using the proceeds from the false and fraudulent claims, (*see id*. 31-38).

The Government asks the court to preclude Ozuligbo "from introducing any evidence of differences between Nigerian and American cultural norms," on the ground that "[s]uch evidence is irrelevant to the charged crimes and its prejudicial effect outweighs any probative

2

value." (Doc. 72 at 1; *see also id.* at 2 ("The United States anticipates that defendant Ozuligbo will attempt to offer a pseudo defense of duress or coercion by testifying – or calling other witnesses who will testify – that in Nigerian culture women are often subordinate to, subjugated by, or exploited by their male counterparts; in this case, defendant [Patrick Emeka] Ifediba (Ms. Ozuligbo's brother).")). In response, Ozuligbo contends:

> Defendant Ozuligbo believes while evidence of "culture" may not be relevant and admissible, the relationship between this Defendant and her brother, Co-Defendant Patrick Ifediba[,] may be relevant to any defense that her actions were not intentional or of her own will but caused by duress. While not stating [her] defense at this point, Defendant Ozuligbo believes she should be allowed to argue to the jury that based upon the relationship she had with her brother, she was compelled to act in a subservient manner and follow his directions.
>
> Ozuligbo should have an opportunity to present evidence [that,] because of the family/cultural situation she found herself in[,] her ability to act in an intentional manner [was affected]. It would greatly restrict her ability to present a defense to the charges in this case [to exclude such evidence]. This Court should be allowed to hear the evidence at the time it is presented and determine what may be relevant towards a defense to the intentional acts required to be guilty of the frauds alleged in the indictment. The Court can adequately charge the jury as to the law to determine what may be a valid defense to the charges against [Ozuligbo] in the indictment.

(Doc. 86 at 3-4.)

Ozuligbo has not disclosed what evidence she intends to present of her "family/cultural situation." Rather, she asserts that cultural evidence "may be relevant to any defense that her actions were not intentional or of her own will but caused by duress." (*Id.* at 3.) The Eleventh Circuit has established the following required evidentiary showing to establish "duress": [Defendant] must show that [she] performed or . . . consented to the

3

unlawful act because (1) [she] was under an immediate threat of death or serious bodily injury, (2) [she] had a well grounded fear that the threat would be carried out, and (3) [she] had no reasonable opportunity to escape [or inform the authorities of her predicament]." *United States v. Sixty Acres in Etowah Cty.*, 930 F.2d 857, 860 (11th Cir. 1991) (quoting *United States v. Blanco*, 754 F.2d 940, 943 (11th Cir.1985)); *see also United States v. Alvear*, 181 Fed. Appx. 778, 780 (11th Cir. 2006) (citing *United States v. Alzate*, 47 F.3d 1103, 1104 (11th Cir.1995)). "[A] general concern that a coconspirator *might* retaliate does not establish the duress defense;" only evidence showing that "the coercive party threaten[ed] immediate harm which the coerced party [could not] reasonably escape" justifies a duress defense. *Sixty Acres*, 930 F.2d at 860-61 (emphasis added). Nothing before the court indicates that Ozuligbo intends to produce such evidence of threats of immediate harm.

The court notes that neither the Supreme Court nor the Eleventh Circuit have endorsed a "cultural defense"[2] in federal criminal law that would excuse a defendant's criminal conduct perpetrated due to his or her subservience to a third party.[3] Nevertheless, courts

---

[2]"[T]he term 'cultural defense' refers to the introduction of cultural evidence by immigrant and/or racial minority defendants seeking to refute or mitigate criminal charges." Cynthia Lee, *Cultural Convergence: Interest Convergence Theory Meets the Cultural Defense*, 49 ARIZ. L. REV. 911, 915 (2007).

[3]The court has found only one case in this Circuit to mention a "cultural" defense. *Bello v. United States*, No. 1:10-CR-397-WSD, 2016 WL 8668490 (N.D. Ga. Oct. 14, 2016). That court noted, without discussion, that such a defense has been rejected at the pretrial conference:

> At the pretrial conference, the Court summarized the case law regarding admissibility of evidence of the culture and customs of another country, and

have rejected defendants' attempts to excuse their criminal behavior based on threats and/or domination by a third party that do not rise to the level of affirmative defenses of duress or necessity. *See Sixty Acres*, 930 F.2d at 860 (describing wife/defendant as husband's "slave" but finding wife's "*generalized* fear of persecution from her husband [did] not allow her to escape the consequences [of ] her consent to his illegal acts;" noting the court "may not substitute . . . a vaguely-defined theory of 'battered wife syndrome' for the showing of duress"). *See United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990) ("Congress meant to eliminate any form of legal excuse based upon one's lack of volitional control. This includes a diminished ability or failure to reflect adequately upon the consequences or nature of one's actions. While scholars might debate the subtle distinctions in moral culpability occasioned by a person's relative capacity to consider her actions or resist unconscious motivation, Congress chose to eliminate any form of legal excuse based upon psychological impairment that does not come within the carefully tailored definition of insanity in section

---

    held: "Because it's not a defense to these crimes that what might happen in another country and be countenanced in another country, is not a defense to a charge brought against a person in the United States, the government's motion is granted." ( [104] at 3-6)(citing *United States v. Booker*, 655 F.2d 562 (4th Cir. 1981); *United States v. Rubio-Villareal*, 927 F.2d 1495 (9th Cir. 1991); *United States v. Ruelas-Altamirano*, 463 F.2d 1197 (9th Cir. 1972); *United States v. Chen*, 754 F.2d 817 (9th Cir. 1985)).

*Id*. at *7 n.6. In another decision, the Eleventh Circuit criticized a district court for relying "on a stereotype that a Hispanic woman would trust blindly her male sibling," noting no evidence regarding that cultural stereotype had been presented to the jury. *See United States v. Almanzar*, 634 F.3d 1214, 1223 (11th Cir. 2011).

17(a).").[4]  The court need not decide whether, and to what extent, a defense based on Nigerian culture and heritage (without proof of the elements of an affirmative defense of duress) is admissible because Ozuligbo has not proffered any evidence in opposition to the Government's Motion in Limine.

"To be able to pursue a defense of duress, a defendant must (if asked) proffer evidence sufficient to prove each of the elements of that defense." *United States v. Alvear*, 181 Fed. Appx. 778, 780 (11th Cir. 2006) (citing *United States v. Bailey*, 444 U.S. 394, 415 (1980); *United States v. Montgomery*, 772 F.2d 733, 736 (11th Cir. 1985)).  Although given the opportunity to respond to the Government's motion in limine, Ozuligbo did not provide any indication of the nature and/or substance of her evidence of a defense based on her "cultural/family situation."  Under these circumstances, granting the motion in limine to exclude the unidentified evidence of this defense is appropriate. *United States v. Aguinaga*, 643 Fed. Appx. 858, 861 (11th Cir. 2016) ("Generally, courts should not prohibit a defendant from presenting a defense theory to the jury, but there must be a factual basis for the defense.") (citing *United States v. Thompson*, 25 F.3d 1558, 1564 (11th Cir. 1994)); *see United States v. Alvarado*, 808 F.3d 474, 488 n.10 (11th Cir. 2015); *United States v. Moss*,

---

[4]Section 17(a) states: "It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts.  Mental disease or defect does not otherwise constitute a defense."  18 U.S.C. § 17(a).  By quoting from the *Cameron* opinion, the court does not mean to equate cultural norms resulting in a lack of volitional control under certain family circumstances with a "psychological impairment."

6

297 Fed. Appx. 839, 841 (11th Cir. 2008); *United States v. Harmon*, 213 Fed. Appx. 914, 916 (11th Cir. 2007); *Alvear*, 181 Fed. Appx. at 780.

The court finds that Ozuligbo has failed to demonstrate a prima facie case of duress; therefore, evidence of duress based on her culture and/or heritage defense is due to be excluded. Ozuligbo may ask the court to revisit this ruling should she elect to testify and intend to produce evidence that meets our circuit's admissibility standards.

                              **R. DAVID PROCTOR**

                              UNITED STATES DISTRICT JUDGE