## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:18-cr-103-RDP-JEO** |
| | } | |
| **PATRICK EMEKA IFEDIBA,** and **NGOZI JUSTINA OZULIGBO** | } | |
| | } | |
| **Defendants.** | } | |

### <u>MEMORANDUM OPINION</u>

This matter is before the court on Motions for a New Trial (Docs. # 177, 179) filed by Defendant Patrick Emeka Ifediba and Defendant Ngozi Justina Ozuligbo. The Motions are fully briefed and ripe for review. (Docs. # 177, 179, 180). After careful review, the court concludes that the Motions are due to be denied.

### I.    Background

Defendants Patrick Emeka Ifediba and Uchenna Grace Ifediba (who was found incompetent and did not go to trial) were married and each a physician who specialized in internal medicine. (Doc. #1 at 1). Both Defendants were licensed to practice medicine in Alabama, and each obtained a Drug Enforcement Administration ("DEA") registration, which authorized them to prescribe controlled substances. (*Id.*). Defendant Patrick Ifediba formed and operated Care Complete Medical Clinic ("CCMC"), along with Uchenna Ifediba, as a private medical clinic. (*Id.* at 2). They provided medical services at CCMC, including pain management and allergy treatment. (Doc. # 1 at 2–3).

Defendant Clement Essien Ebio, an alleged co-conspirator who also did not go to trial, was

the owner of RCM Medical Billing, LLC and RCM Medical Group (collectively "RCM"), both of which provided medical billing and medical practice management services to CCMC. (*Id.* at 2–3). Defendant Ebio also served as the regional manager of a Georgia allergy services company. (*Id.* at 2). Defendant Ngozi Justin Ozuligbo was a licensed practical nurse, who worked at CCMC. (*Id.*). She is the sister of Defendant Patrick Ifediba and was employed, at times, as a CCMC employee, and at other times as a Georgia Allergy Services company employee. (*Id.*).

Beginning in February 2015 and spanning over the course of eight months, four undercover agents working with the DEA visited CCMC in Birmingham, Alabama. The undercover agents posed as patients and visited CCMC as part of a DEA investigation into Defendants Patrick and Uchenna Ifediba's controlled substance prescription practices. On March 29, 2018, after a three-year investigation, Defendants Patrick Ifediba, Uchenna Ifediba, Ngozi Justina Ozuligbo, and Clement Ebio were charged in a forty-four (44) count indictment.[1] (*See id.*).

The indictment alleges that from January 1, 2013, and continuing through April 28, 2016, Defendants Patrick and Uchenna Ifediba conspired to operate the CCMC as a "pill mill" in violation of the Controlled Substances Act. (*Id.* at 21–27). The indictment also contains a number of substantive counts alleging that Defendant Patrick Ifediba unlawfully distributed controlled substances. (*Id.*). The indictment alleges that Defendant Ozuligbo defrauded patients, participated in money laundering, and conspired to defraud various medical insurance companies. (*Id.*).

The trial of Defendant Ifediba and Defendant Ozuligbo began on June 24, 2019. The Government's case in chief included forty-five witnesses and over 350 exhibits. The Government

---

[1] Defendant Uchenna Ifediba and Defendant Clement Essein Ebio were charged in the indictment, but they were not Defendants in the 2019 trial. (Doc. #1 at 1–2). On July 18, 2019, the Government moved to dismiss the indictment against Defendant Uchenna Ifediba due to competency issues. (Docs. # 40, 46). On July 20, 2019, the court dismissed the indictment against her without prejudice. (Doc. # 57). Defendant Ebio and the Government reached a plea agreement on July 20, 2018. (*See* Doc. # 60).

rested its case-in-chief on July 8, 2019. Subsequently, Defendants made oral motions for judgments of acquittal.

Following the Governments case in chief, Defendant Ifediba presented his case. He called nine witnesses, including two experts. Defendant Ifediba rested on July 10, 2019. Both Defendants renewed their motions for acquittal. Defendant Ifediba's motion was denied. However, on motion from the Government, the Court dismissed Count Eleven against Defendant Ozuligbo. (Doc. # 170). As to the remaining counts against her, the court denied her motion for acquittal. On July 15, 2019, the jury received the case. On July 17, 2019 the jury convicted Defendants Ifediba and Ozuligbo on all remaining counts. Both Defendants filed timely motions seeking new trials under Federal Rule of Criminal Procedure 33. (Docs. # 177, 179).

## II. Legal Standard

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, the court is empowered to vacate a judgment and grant a new trial "if the interests of justice so require[]." FED. R. CRIM. P. 33(b)(2). There are two grounds on which a court may grant a motion for a new trial: (1) when there is newly discovered evidence; or (2) if it is in the interest of justice. *United States v. Campa,* 459 F.3d 1121, 1151 (11th Cir. 2006). The decision whether to grant or deny such a motion rests in the sound discretion of the trial court. *United States v. Champion,* 813 F.2d 1154, 1170 (11th Cir. 1987). The trial court may grant a motion for a new trial even where the defect does not constitute reversible error, or even when there is no legal error at all. *United States v. Vicaria*, 12 F.3d 195, 198–99 (11th Cir. 1994). Rather, the court "has very broad discretion in deciding whether there has been a miscarriage of justice*." United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir. 1988). Indeed, the power of a district court to grant a new trial "is not limited to cases where the district court concludes that its prior ruling, upon which it bases the new trial, was legally

erroneous. *Vicaria*, 12 F.3d at 198–99. In addition, the cumulative effect of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible. *United States v. Thomas*, 62 F.3d 1332, 1343 (11th Cir. 1995).

"In evaluating a motion for a new trial, [a] district court need not view the evidence in the light most favorable to the verdict." *United States v. Ward,* 274 F.3d 1320, 1323 (11th Cir. 2001) (citations and internal quotations omitted). However, "[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Martinez,* 763 F.2d at 1312–13. Importantly, motions for new trials should be granted "sparingly," and only in "those really 'exceptional cases.'" *Id.* at 1313 (internal citations omitted).

## III.    Analysis

Defendant Ifediba claims a new trial is warranted for four reasons: (1) the court made erroneous evidentiary rulings; (2) the evidence was insufficient; (3) the court gave erroneous jury instructions; and (4) it was improper to join his co-defendant, Ngozi Justina Ozuligbo, for purposes of trial. (Doc. # 177). Defendant Ozuligbo joins Defendant Ifediba in his second objection and challenges the sufficiency of the evidence. (Doc. # 179). The court addresses each argument, in turn.

### a.   Evidentiary Rulings

To successfully challenge a verdict on the basis of a district court's incorrect evidentiary ruling, a party must: (1) "demonstrate either that his claim was adequately preserved or that the ruling constituted plain error"; (2) "establish that the district court abused its discretion in interpreting or applying an evidentiary rule"; and (3) "establish that this error affected ... a

substantial right." *United States v. Stephens*, 365 F.3d 967, 974 (11th Cir. 2004) (citations and internal quotations omitted).

"[C]riminal defendants must be afforded the opportunity to present evidence in their favor." *United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004). A district court's exclusion of a defendant's otherwise admissible evidence violates the constitutional rights to Compulsory Process and Due Process in four circumstances.

> First, a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense or an affirmative defense. Second, a defendant must generally be permitted to introduce evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more of the elements of the charged offense or an affirmative defense more or less certain. Third, a defendant generally has the right to introduce evidence that is not itself tied to any of the elements of a crime or affirmative defense, but that could have a substantial impact on the credibility of an important government witness. Finally, a defendant must generally be permitted to introduce evidence that, while not directly or indirectly relevant to any of the elements of the charged events, nevertheless tends to place the story presented by the prosecution in a significantly different light, such that a reasonable jury might receive it differently.

*Hurn*, 368 F.3d at 1363 (internal footnotes omitted).

Defendant Ifediba argues that evidence was erroneously admitted or excluded regarding: (1) peer comparison data; (2) revocation of his DEA registration; (3) pharmacy compliance with prescriptions; and (4) sanctions (or lack thereof) by the Alabama Board of Medical Examiners. (Doc. # 177 at ¶4).

### i. Peer Comparison Data

Defendant Ifediba argues the court erroneously admitted peer comparison charts at trial. (*Id.*). After review, the court concludes that it did not err in admitting the Viva Health peer comparison chart, or otherwise. The peer comparison charts were used by the Government to illustrate the disparity between the value of claims from other allergy specialists in comparison

with Defendant Ifediba's submitted claims. (*Id.*). Defendant Ifediba argues the charts were prejudicial and "had nothing to do with the issue of conspiracy to commit fraud . . . ." (*Id.*). In presenting this argument, Defendant Ifediba cites no any legal authority, nor does he provide any additional rationale to support his argument.

In response, the Government notes that the peer comparison charts were provided to Defendant Ifediba on February 11, 2019, four months prior to trial, and he did not object to the admissibility of the exhibits in any of his pre-trial motions *in limine*. (Doc. # 180 at 7). Moreover, at trial, Defendant Ifediba only objected to the admissibility of one peer comparison exhibit pertaining to one health insurance company, Viva Health. (*Id.*).

The peer comparison charts were used by the Government to illustrate disparities in medical billing and the number of patients seen by the Defendant. This critical information was relevant to the Government's theory at trial. In fact, the use of peer-comparison charts at trial to illustrate disparities in medical billing is a common practice. *United States v. Richardson*, 233 F.3d 1285, 1293 (11th Cir. 2000) (stating "[s]ummary charts are permitted generally by Federal Rule of Evidence 1006 and the decision whether to use them lies within the district court's discretion."); *United States v. Rutigliano*, 614 F. App'x 542, 544–45 (2d Cir. 2015) ("[P]ermitting the government to introduce charts comparing disability applications prepared by [Defendant] for himself and others, and charts showing the disparity in disability rates by [others]."); *United States v. Casamento,* 887 F.2d 1141, 1151 (2d Cir. 1989) ("This court has long approved the use of charts in complex trials.") ; *United States v. Pinto,* 850 F.2d 927, 935–36 (2d Cir. 1988) (approving Government's use of summary charts at trial). In his Motion, Defendant Ifediba merely regurgitates the same arguments he made at trial. (*See* Doc. # 177). Just as at trial, and for the reasons already stated, the court finds no error in admitting the Viva Health peer comparison

charts.

Even if the Viva Health chart had not been admitted, there was overwhelming evidence of Defendant Ifediba's guilt. Thus, even if the chart was not due to be admitted (and, to be clear, it was clearly admissible) admission of the Viva Health chart was "harmless beyond a reasonable doubt." *United States v. Emmanuel*, 565 F.3d 1324, 1336 (11th Cir. 2009). "The inquiry under the harmless error doctrine is whether there was "a reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. Cruz,* 765 F.2d 1020, 1025 (11th Cir. 1985) (citing *Fahy v. Connecticut,* 375 U.S. 85, 86-87 (1963)). Here, the evidence presented against Defendant Ifediba at the three-week trial was sufficient to negate any reasonable doubt that the admission of the Viva Health comparison chart contributed to his conviction. *Cruz,* 765 F.2d at 1025 (holding that "the other evidence against [Defendants] was sufficient to negate any reasonable doubt whether the erroneous admission of the [evidence] contributed to their convictions.").

Because Defendant Ifediba failed to object to the other charts before or during trial, the appropriate standard of review for the rest of the peer comparison charts is "plain error only." *United States v. Emmanuel*, 565 F.3d 1324, 1336 (11th Cir. 2009); *United States v. Turner,* 474 F.3d 1265, 1275 (11th Cir. 2007) ("[I]t is well-settled that where . . . a defendant fails to preserve an evidentiary ruling by contemporaneously objecting, our review is only for plain error."). To prevail on plain error review, a party must, as an initial matter, establish three conditions. "First, there must be an error that has not been intentionally relinquished or abandoned. Second, the error must be plain—that is to say, clear or obvious. Third, the error must have affected the defendant's substantial rights." *Rosales-Mireles v. United States,* 138 S. Ct. 1897, 1904 (2018) (quoting *Molina-Martinez v. United States,* 136 S. Ct. 1338, 1343 (2016)). If the first three conditions are

met, a court "may exercise its discretion to notice a forfeited error, but only if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Hernandez*, 906 F.3d 1367, 1370 (11th Cir. 2018) (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005)). "Meeting all four prongs is difficult, 'as it should be.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)). Here, we do not struggle to conclude that the four prongs are not satisfied.

The court's first step under the plain error analysis is to determine if there was an error that has not been "intentionally relinquished or abandoned." *Rosales-Mireles*, 138 S. Ct. at 1904. Here, there was not. There was no deviation from a legal rule. Rather, the use of peer comparison charts is a common practice and is generally permitted by the Federal Rules of Evidence. *See Richardson*, 233 F.3d at 1293; Fed. R. Evid. 1006. At the second step, the court notes that there was no obvious error by the court in allowing the admission of the peer comparison charts. Third, the admission of the charts did not affect Defendant Ifediba's substantial rights. Indeed, even in the absence of the peer comparison charts, the voluminous amount of evidence presented by the Government likely would have resulted in Defendant Ifediba's conviction. (*See* Doc. # 172, Exh. 1–504). Finally, as the first three prongs were not met, the court need not consider whether the admission of the peer comparison charts "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Hernandez*, 906 F.3d at 1370 (citations omitted). But, in an abundance of caution, the court notes that the admission of the charts in no way compromised the fairness of the proceedings. Defendant argues that the charts were prejudicial and that the "only purpose of the[] comparisons was to prejudice the jury with the issue of money made by the Defendant and number of patients seen by the Defendant during the three years of the conspiracy." (Doc. # 177 at ¶4). Aside from calling out "prejudice," Defendant Ifediba does not state how the information on the

charts was unfairly prejudicial. Therefore, after a thorough analysis, the court concludes that it did not err in admitting the peer comparison charts, Viva Health or otherwise.

### ii. DEA Registration

Next, Defendant Ifediba argues the court precluded him from presenting evidence that the DEA did not pursue administrative action to revoke his DEA registration.[2] (Doc. # 177 at ¶5). Defendant Ifediba contends that he "should have been given the opportunity in the trial to rebut the issue that [he] was prescribing scheduled drugs that were a threat to patients[]" by showing "the DEA's office did not attempt to suspend the Defendant's privilege to prescribe certain drugs." (*Id.*).

In response, the Government argues that Defendant's Ifediba's DEA licensure is entirely unrelated to whether he violated the Controlled Substances Act. (Doc. # 180 at 8–9). What is more, the Government characterizes Defendant's rationale as "preposterous" because "[D]efendant's own pain management expert[] testified at trial that at least one of the prescription cocktails [Defendant] Ifediba issued to an undercover agent was an ***overdose waiting to happen***." (Doc. # 180 at 9 (emphasis in original)).

Here, the court concludes that interests of justice do not require a new trial for Defendant Ifediba. First, the court was right—evidence that the DEA did not pursue administrative action against him at some point in time does not mean that he did not violate the Controlled Substances Act. Second, notwithstanding the court's ruling, during opening statements defense counsel told the jury that Defendant Ifediba had a "license" from the DEA that was maintained before, during, and after the charged conspiracy. In fact, he presented evidence about his active DEA registration during trial. And, defense counsel re-visited the issue of Defendant's licensure during his cross-

---

[2] Defendant Ifediba's DEA Registration gave him the authority to prescribe Schedule II – V controlled substances. (Doc. # 177 at ¶5).

examination of DEA Diversion Investigator, Kenneth Wade Green. The interests of justice do not require a new trial because the court's ruling was correct, and, in any event, Defendant Ifediba presented evidence of his licensure during the trial. Putting aside whether the cross examination of Green skirted the line of the court's prior ruling in this lengthy trial, the point is that Defendant presented this evidence, even if it is irrelevant.

### iii. Prescriptions

Defendant Ifediba argues the court erred by not allowing him to present evidence "that the [prescription] medication was for a legitimate purpose" and that "no pharmacy refused to fill the prescription of the patients other than the undercover officers." (Doc. # 177 at ¶5). Further, Defendant Ifediba contends that the court erred by precluding him from presenting evidence that "pharmacists have a corresponding duty under the Controlled Substances Act to dispense controlled substances in good faith . . . ." (Doc. # 180, at 10 (citing Doc. # 177 at ¶5)).

Contrary to Defendant's assertions, evidence of the Controlled Substances Act's good faith dispensing oath was presented at trial in at least two instances. In the first, on direct examination, the Government questioned Andrew Wallace, a former Walgreens pharmacist, about a pharmacist's good faith dispensing oath. In the second, defense counsel cross-examined Wallace and "delved into a pharmacist's good faith dispensing oath at length." (Doc. # 180 at 11).

Similarly, evidence of a pharmacy refusing to fill Defendant Ifediba's prescriptions at trial was presented to the jury. Defendant Ifediba's motion argues that, "[t]he law put[s] a responsibility on the pharmacy not to fill a prescription that is not for medical purposes" and "Defendant should have been allowed to present evidence that no pharmacy refused to fill the prescription of the patients other than the undercover officers." (Doc. # 177 at 3). Defendant Ifediba's argument is foreclosed by the testimony of DEA Task Force Officer Kira McWaine. Officer McWaine testified

that during the course of her investigation of Defendant Ifediba, multiple pharmacies refused to fill Defendant Ifediba's prescriptions. Officer McWaine's testimony was further corroborated by the testimony of several of Defendant Ifediba's former patients, who were not undercover agents, as well as the Walgreen's pharmacist, Andrew Wallace.

Accordingly, Defendant Ifediba's Motion for a new trial on this ground is based on a flawed account of the evidence presented at trial, and is due to be denied.

### iv.   Sanctions by the Alabama Board of Medical Examiners

Next, Defendant Ifediba argues that he "was unlawfully prevented from [presenting] evidence [to] the jury that [he] was exonerated by the Alabama Board of Medical Examiners . . ." (Doc. # 177 at ¶9). Once again, Defendant Ifediba's perception of his "exoneration" is at best a mischaracterization.

To say that Defendant Ifediba was exonerated is, in fact, an inaccurate account of the Alabama Board of Medical Examiners administrative process. The Board did allow Defendant Ifediba to maintain a medical license and his prescribing authority. However, the Board restricted his prescribing protocols and required him to take remedial action. This was not an "exoneration," as Defendant Ifediba claims. Moreover, the court considered Defendant Ifediba's arguments on this issue at a pre-trial conference on the Government's Motion *in limine*. (Doc. # 94).  The court rejected Defendant Ifediba's arguments regarding his "exoneration," and simultaneously precluded the Government from presenting the Board's video-recorded interview of Defendant Ifediba, in which they vehemently denounced his prescribing practices.

Although Defendant Ifediba was prohibited from presenting this evidence at trial, he did not heed the direction of the court. Rather, Defendant Ifediba elicited testimony from multiple witnesses regarding the status of his medical license and prescribing authority. Here, again,

Defendant Ifediba seeks to eat his cake and have it too. The court was right to preclude the testimony. He simply cannot argue that he was prejudiced by the court's decisions when he indirectly elicited the very evidence the court ordered him to keep out. Therefore, this portion of Defendant Ifediba's Motion is due to be denied.

### b. Alleged Insufficiency of Evidence

Defendants Ifediba and Ozuligbo each allege that there was insufficient evidence to support their convictions. When considering the sufficiency of the evidence, "[t]he jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial, and the court must accept all reasonable inferences and credibility determination made by the jury." *United States v. Sellers,* 871 F.2d 1019, 1021 (11th Cir. 1989) (internal citations omitted). When a defendant challenges the sufficiency of evidence in a motion for a new trial, the court "need not view the evidence in the light most favorable to the verdict" and "[i]t may weigh the evidence and consider the credibility of witnesses." *United States v. Martinez,* 763 F.2d 1297, 1312 (11th Cir. 1985). Yet, "the court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable . . . . [] a conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Tate,* 586 F.3d 936, 944 (11th. Cir. 2009) (internal quotations omitted). Indeed, a new trial should be granted only if the evidence "preponderate[s] heavily against the verdict, such that it would be [a] miscarriage of justice to let the verdict stand." *United States v. Cox,* 995 F.2d 1041, 1043 (11th Cir. 1993). Motions for a new trial based on the sufficiency of the evidence are to be granted "sparingly and with caution" and only in "exceptional circumstances." *United States v. Martinez,* 763 F.2d 1297, 1313 (11th Cir. 1985).

### i. ALBME Rules

Defendant Ifediba argues, for the first time,[3] that the Unites States convicted him on a standard of proof based on the regulations promulgated by the Alabama Board of Medical Examiners (i.e., the Alabama standard of care) and not the Federal DEA standard of care. (Doc. # 177 at ¶8). Specifically, Defendant Ifediba argues that the federal DEA standard of "beyond a reasonable doubt" and "for a legitimate purpose and in the ordinary course of professional practice" was the correct standard of care. (*Id.*). However, Defendant Ifediba's arguments are off the mark. When Congress enacted the Controlled Substances Act, it allowed the states to define the applicable standard of care. *United States v. Tobin,* 676 F.3d 1264, 1273–78 (11th Cir. 2012) ("When Congress enacted the [Controlled Substances Act], it thus manifested its intent to leave it to the states to define the applicable standards of professional practice."), *abrogated on other grounds by United States v. Davila,* 569 U.S. 587 (2013).

Defendant Ifediba's argument fails. There was no prejudice to Defendant Ifediba based on evidence presented or argument about the Alabama standards of care. Therefore, the interests of justice do not warrant a new trial on these grounds.

### ii. Absence of an Applicable Standard of Care

Defendant Ifediba argues that prior to March 2016, there was not a criminal standard of care governing the conduct of medical doctors prescribing controlled substances. (Doc. # 177 at ¶10). Specifically, Defendant Ifediba states "there was no standard [of care] for Morphine Equivalency Dosage, nor a [c]riminal [s]tandard of [c]are for which medical doctors were to proscribe their conduct and therefore the Defendant was denied his right to substantive and

---

[3] Because Defendant Ifediba is raising this argument for the first time in a Rule 33(a) motion, the court reviews the unpreserved objection for plain error. *United States v. Tobin,* 676 F.3d 1264, 1273 (11th Cir. 2012) ("An unpreserved objection to a district court decision, such as an evidentiary ruling or its response to a jury question, is reviewed for plain error."); *United States v. Dunlap,* 279 F.3d 965, 966-67 (11th Cir. 2002).

procedural Due Process of Law Ex Post Facto." (*Id.*).

Although Defendant Ifediba's brief is unclear, the court construes his request for a new trial based on an "ex post facto" criminalization of his prescribing practices. (*Id.*). First, the court notes that while Defendant Ifediba makes this blanket assertion, he has not provided any citation to relevant authority to support it. Nor has he responded to the Government's point that "[c]arried to its logical extreme, [this argument] would require the court to find that no amount of evidence of improper prescribing could be offered at trial to convict him" and "[i]t would also mean that every single pill mill trial . . . based on prescriptions written prior to March 2016 and resulting in conviction is unconstitutional." (Doc. #180 at 15–16).

The court agrees with the Government. The standard of review requires that "the court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable . . . . [A] conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *Tate,* 586 F.3d at 944 (11th Cir. 2009) (internal quotations omitted). Moreover, this argument was presented to the jury during the three-week trial. And the court did permit evidence, in the form of expert testimony, that the CDC guidelines were changed in 2016. In fact, both experts who testified on this subject matter agreed that, although the guidelines changed in 2016, even before that date prescriptions issued by a physician had to be written for a legitimate medical purpose and within the scope of professional practice.

When considering the appropriate standard of review and the evidence presented to the jury on this issue, there was overwhelming evidence of Defendant's guilt. Thus, his conviction must be upheld.

### iii.  Defendant Ozuligbo's Participation in Health Care Fraud

Defendant Ozuligbo's Motion for a New Trial is premised on the same arguments made in her oral Rule 29(a) motion presented at trial. The court provides a brief review of Defendant Ozuligbo's oral Rule 29(a) Motion, the Government's rebuttal, and the court's subsequent rulings.

On July 8, 2011 Defendant Ozuligbo argued that she was entitled to Judgment of Acquittal on all counts. *See* FED. R. CRIM. P. 29(a). Regarding the Conspiracy charge alleged in Count One,[4] Defendant Ozuligbo argued that the government failed to prove any knowledge on her part that the orders she received for allergy testing were not orders based on Defendant Ifediba's training and experience as a doctor. However, there was evidence presented to the contrary. For example, there was testimony that a front office employee at CCMC confronted Defendant Ozuligbo about the allergy tests and she told the employee to "just do her job." The court found there was evidence presented such that a jury could have found Defendant Ozuligbo guilty under a reasonable construction of the evidence, and the Rule 29(a) Motion as to Count one was denied.

In Counts Two through Eleven[5] the government alleged that Defendants Patrick Ifediba, Uchenna Ifediba, Clement Ebio, and Ngozi Ozuligbo:

> [D]evised and intended to devise, and participated in, a scheme and artifice: (a) to defraud health care benefit programs, namely Medicare and Private Insurers, as to material matters in connection with the delivery of and payment for health care benefits, items and services; and (b) to obtain money from Medicare and Private Insurers by means of false and fraudulent pretenses, representations, promises, and by concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

(Doc. #1 at 19). Specifically, Counts Two through Eleven involve services allegedly performed on individual patients. Defendant Ozuligbo argued that there was no evidence she submitted any

---

[4] In Count One of the Indictment, the Government alleged that Defendants Patrick Ifediba, Uchenna Grace Ifediba, Clement Ebio, and Ngozi Ozuligbo knowingly and willfully, combined, conspired, and agreed to commit the offense of health care fraud in violation of 18 U.S.C. §1349. (Doc. # 1 at 12).

[5] On motion of the Government, the court dismissed Count 11 of the Indictment as to Defendant Ozuligbo only. (Doc. # 170).

fraudulent information to Medicare or private insurers. Moreover, she argued that there was no evidence that services claimed to be performed were not performed. For example, Defendant Ozuligbo argued that the Government did not present evidence indicating that an allergy test was billed, but not administered. She also argued that there was no evidence presented that she ever tested or injected the patients listed in Counts Three Four, Six, and Eleven.

In response, the Government argued that Defendant Ozuligbo was not charged with actually administering shots or allergy tests; rather, she was charged with knowingly executing a scheme and artifice to defraud health care benefits programs. Thus, she did not have to be personally involved with each person listed in Counts Three, Four, Six, and Eleven, because it was her participation in the scheme that matters. As there was evidence presented to the jury that Defendant administered an allergy test and/or injection to the patients listed in Counts Two, Five, Seven, Eight, Nine, and Ten, the court denied her Rule 29(a) Motion as to those counts. However, the court asked the government to submit additional briefing regarding the charges contained in Counts Three, Four, Six, and Eleven—where it was not alleged that she was personally involved in the offensive conduct. Specifically, the court requested the Government to address Defendant Ozuligbo's culpability for health care fraud where there was no evidence presented that she administered an allergy test and/or injection to the individuals named in Counts Three, Four, Six, and Eleven.

On July 11, 2019, after taking Defendant Ozuligbo's Rule 29(a) Motion for Counts Three, Four, Six, and Eleven under advisement, and after considering the Government's briefing on the *Pinkerton* theory of liability, the court heard arguments on Defendant Ozuligbo's Rule 29(a) Motion and renewed Motion for Judgment of Acquittal. At the conference, the court orally denied her Rule 29(a) Motion on Counts Three, Four, and Six. The court determined that a jury could find

there was sufficient evidence that she engaged in a conspiracy, that the crimes at issue were committed during the scope of the conspiracy, and that it was reasonably foreseeable that her co-conspirators would commit the offensive conduct at issue as a consequence of the conspiracy. And, based upon that evidence, there is a basis to hold Defendant Ozuligbo vicariously liable under the *Pinkerton* doctrine for the substantive offenses committed by other defendants, even if there was insufficient evidence that she herself participated in the substantive acts that met each of the elements of those charges.[6]

Finally, as to Counts Thirty-Four and Forty,[7] which pertain to money laundering charges, Defendant Ozuligbo argued that there was no evidence presented to the jury that showed she knew the money collected at CCMC was in any way a product or a source of unlawful activity. In response, the Government argued that to be convicted of money laundering, it is unnecessary for it to show the individual actually participated in the underlying unlawful activity. Rather, all that is required for a money laundering conviction is a defendant's knowledge that the laundered funds are the proceeds of criminal activity. The Government argued that the evidence presented at trial was sufficient to show that Defendant Ozuligbo knew the funds were proceeds of criminal activity. Further, the Government presented evidence that Defendant Ozuligbo was a licensed practical nurse ("LPN"), who at times worked as the front office manager at CCMC. The Government argued that based upon the evidence presented at trial it would have been obvious to anyone holding the titles of LPN and front office manager at CCMC that the patients were coming to the

---

[6] At the July 11, 2019 status conference, the court also orally denied, Defendant Ozuligbo's Renewed Motion for Judgment of Acquittal as to Count One, Two, Five, Seven, Eight, Nine, Ten, Thirty-Four, and Forty, for the same reasons as her Rule 29(a) Motion was denied.

[7] In Count Thirty-Four, the Government alleged that Defendants Patrick Ifediba and Ngozi Ozuligbo knowingly conspired to commit offenses against the United States in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1957. In Count Forty, the Government alleges that Defendants Patrick Ifediba and Ngozi Ozuligbo participated in money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

practice primarily to get opioids, and that opioids were being distributed for other than legitimate medical purposes.

In support of this argument, the Government notes that among other things "the defendant told the FBI the reasons she left the clinic was to get away from all that craziness." The government argued that this statement evidences that Defendant Ozuligbo knew the clinic was a pill mill and the money collected at the clinic were proceeds of illegal activity. The court agreed with the Government's argument and found that sufficient evidence had been admitted for the jury to conclude that Defendant Ozuligbo conspired to commit money laundering, and actually participated in money laundering.

In Defendant Ozuligbo's Rule 33 Motion, she does not cite to any legal authority. (*Id.*) Rather, she merely argues that there is a lack of substantial evidence from which a reasonable fact finder could find guilt beyond a reasonable doubt. The court disagrees.

When considering the appropriate standard of review on a Rule 33 motion, "a conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *Tate*, 586 F.3d at 944. Thus, Defendant's Ozuligbo's "belief" that the verdict is not supported by substantial evidence cuts no ice. As previously discussed in regard to Defendant Ozuligbo's Rule 29(a) Motion, the record contains substantial evidence that she committed (or was criminally responsible for) each of the charged offenses. (*See* Docs. # 1, 180 at 3); *Tate*, 586 F.3d at 944 (holding Defendant's argument that there was a lack of substantial evidence was unpersuasive, because the record contained substantial evidence of each of the charged offenses). Therefore, Defendant Ozuligbo's Rule 33 Motion is due to be denied.

### c. Alleged Erroneous Jury Instruction

Defendant Ifediba revives his argument that a new trial is necessary because the court

erroneously "instruct[ed] the jury that it could convict the Defendant on there [*sic*] layman's view [of the evidence]," even though "the Government and Defendant had to use expert testimony[] to establish [the] required standard of medical care."[8] (Doc. # 177 at ¶12). Defendant Ifediba also made this argument during the July 11, 2019 conference. At the conference, the court considered Defendant Ifediba's objection and overruled it.

The Eleventh Circuit has stated that "[g]enerally district courts 'have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts,'" and "we will not reverse a conviction on the basis of a jury charge unless 'the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial was as to violate due process.'" *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000) (quoting *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993)); *see Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1196 (11th Cir. 2004) (affirming denial of motion for new trial where the appellate court was not left with substantial and ineradicable doubt that the jury was misled by the instruction given); *Christopher v. Cutter Laboratories*, 53 F.3d 1184, 1190 (11th Cir. 1995) ("A district court has broad discretion in formulating jury instructions.").

Not surprisingly, "[m]otions for new trial on the basis of erroneous and prejudicial jury instructions are committed to the discretion of the trial court and reviewed to ascertain whether there has been a clear abuse of that discretion." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1313 (11th Cir. 2000) (citing *Christopher v. Cutter Laboratories*, 53 F.3d 1184, 1190 (11th Cir. 1995)). "The court should order a new trial where [the jury] instructions do not accurately reflect

---

[8] Defendant Ifediba also argues he "was denied procedural Due Process of Law when the jury was not allowed to *reconcile* the expert testimony." (Doc. # 177 at ¶11) (emphasis added). The quoted text is the full extent of Defendant's objection. (*Id.*). He does not provide any explanation for the alleged "reconcil[ing]" error, nor does he provide citations to case law or relevant authority. (*Id.*). The court finds that this ground for a new trial is not properly stated and, in any event, is without merit. It is due to be denied.

the law, and the instructions as a whole do not correctly instruct the jury so that [the court is] left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *United States v. AseraCare Inc.*, 153 F. Supp. 3d 1372, 1384 (N.D. Ala. 2015) (quoting *Broaddus v. Fla. Power Corp.*, 145 F.3d 1283, 1288 (11th Cir. 1998) (internal quotations omitted)). Where an error in the jury instructions did not influence the verdict, it is harmless and does not warrant a new trial. *Phillips v. Irvin*, 2007 WL 2570756, at *9 (S.D. Ala. Aug. 30, 2007)

Specifically, the jury charge Defendant Ifediba objects to reads as follows:

You have heard from a number of medical experts during this trial. However, expert medical testimony is not essential to your consideration of this case, because a jury may find that a doctor violated the Controlled Substances Act from evidence received from lay witnesses surrounding the facts and circumstances of the prescriptions.

Experts can reasonably disagree with each other regarding whether a prescription was written within or outside the usual course of professional practice. However, their disagreement does not mean you cannot consider other evidence and testimony which you heard during trial to form your own finding as to whether a prescription was written within or outside the usual course of professional practice.

(Doc. # 169 at 7).

Here, the jury instruction at issue is a correct statement of the law. *See, e.g.*, *United States v. Enmon*, 686 F. App'x 769, 777 (11th Cir. 2017) (rejecting an objection to a jury instruction that measured the conduct of a physician objectively based on layman's standards); *United States v. Joseph,* 709 F.3d 1082, 1100 (11th Cir. 2013) ("Expert medical testimony is not [] necessary to sustain a conviction under the [Controlled Substances] Act because a jury may find that a doctor violated the Act from evidence received from lay witnesses surrounding the facts and circumstances of the prescriptions.") (internal quotations omitted). Defendant Ifediba has not provided any case law or rationale for his redundant argument that the court improperly instructed

the jury. (Doc. # 177 at 12). As such, he has failed to meet his heavy burden and his motion for a new trial, on the basis of erroneous jury instructions, is denied.

### d. Alleged Improper Joinder

Finally, Defendant Ifediba argues that the court erred by permitting him to be tried with his sister, Defendant Ozuligbo. Defendant Ifediba argues that his sister "attacked [him] as the person who is responsible for the allergy fraud and in closing stated Defendant [Ifediba] and Ebio conspired to commit health care fraud and not [Defendant Ozuligbo]." (Doc. # 177 at ¶6). Further, Defendant Ifediba maintains "these attacks during trial . . . denied [] [him] the right to a fair trial and aided the Government in proving their case against [] [him]." (*Id.*). Defendant Ifediba raises his severance and improper joinder complaints for the first-time post-verdict. Thus, the proper standard of review is plain error.

Federal Rule of Criminal Procedure 8(b) permits the joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses" and "[t]he defendants may be charged in one or more counts together or separately." FED. R. CRIM. P. 8(b). In the Eleventh Circuit, "the general rule is that Defendants indicted together should be tried together, especially in conspiracy cases." *United States v. Chavez,* 584 F.3d 1354, 1360 (11th Cir. 2009*); United States v. Cassano,* 132 F.3d 646 (11th Cir. 1998); *United States v. Jacoby,* 955 F.2d 1527 (11th Cir. 1992); *United States v. Alvarez,* 755 F.2d 830 (11th Cir. 1985).

Notwithstanding the general rule, Rule 14(a) permits a severance of Defendants for trial if their joinder "appears to prejudice a defendant." FED. R. CRIM. P. 14(a). The law in this area is well developed. To succeed on appeal, the Defendant must carry the heavy burden of

demonstrating the lack of a fair trial due to actual, compelling prejudice. *Chavez,* 584 F.3d at 1360; *United States v. Gari,* 572 F.3d 1352 (11th Cir. 2009); *United States v. Novaton,* 271 F.3d 968 (11th Cir. 2001); *United States v. Cobb,* 185 F.3d 1193 (11th Cir. 1999).

Severance motions are rarely granted, and if they are granted, it is generally for the following reason(s):

> (1) where the Defendants rely upon mutually antagonistic defenses; (2) where one Defendant would exculpate the moving Defendant in a separate trial, but will not testify in a joint setting; (3) where inculpatory evidence will be admitted against one Defendant that is not admissible against the other; (4) Where a cumulative and prejudicial "spill over" effect may prevent the jury from sifting through the evidence to make an individualized determination as to each Defendant.

*Chavez,* 584 F.3d at 1360–61 (internal citations and quotations omitted). Although Defendant Ifediba does not specify which ground he relies on, it appears that his argument is premised on the belief that his defenses and Defendant Ozuligbo's defenses were mutually antagonistic. (Doc. # 177 at ¶6) ("Defendant during the trial was attacked by the co-defendant . . . These attacks . . . denied Defendant the right to a fair trial . . . .").

Contrary to Defendant Ifediba's arguments, it is well settled that mutually antagonistic defenses are not *per se* prejudicial and "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro v. United States,* 506 U.S. 534, 540 (1993). Moreover, Rule 14 does not require severance even if prejudice is shown; rather, the rule leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. *Id.* at 538–39.

Here, Defendant has failed to carry the "heavy burden of demonstrating the lack of a fair trial due to actual, compelling prejudice." *See Chavez,* 584 F.3d at 1360. Not only is there a lack of compelling prejudice, Defendant has failed to demonstrate any evidence of prejudice. At trial,

the Government alleged that multiple individuals, including Defendants Ifediba and Ozuligbo, were guilty of the allergy fraud scheme. During the trial, the United Stated offered evidence against both defendants. The jury found both Defendants guilty of the health care fraud and money laundering offenses. As such, Defendant's Ozuligbo's defenses at trial plainly did not result in prejudice for Defendant Ifediba.

What is more, even if there was some risk of prejudice at trial, the court proffered curative limiting instructions to the jury that removed any risk of prejudice.[9] First, the court properly instructed the jury that the Government had "the burden of proving the Defendant guilty beyond a reasonable doubt." (Doc. # 169 at 2). The jury was instructed that it was required to "consider the evidence and law separately as to each Defendant [and for] each count." (*Id.* at 10). Further, the court stated, "[i]f you find a Defendant guilty or not guilty of one crime, then it must not affect your verdict for any other crime or the other Defendant." (*Id.*). Finally, the court admonished the jury that closing arguments were not to be considered evidence. (*Id.* at 33). Therefore, even if there was some risk of prejudice based upon counsel's argument, the courts limiting instructions cured any possibility of prejudice. Accordingly, Defendant Ifediba's motion for a new trial, on erroneous jury instructions grounds, is denied.

## IV.    Conclusion

For the reasons stated above, Defendant Ifediba's Motion for a New Trial (Doc. # 177) and

---

[9] In *Zafiro v. United States,* the Supreme Court held that the following instructions, given by the district court, sufficed to cure any possibility of prejudice. 506 U.S. 534, 541 (1993). "The District Court properly instructed the jury that the Government had the burden of proving beyond a reasonable doubt that each defendant committed the crimes with which he or she was charged." *Id.* (internal citations and quotations omitted). Then the court "instructed the jury that it must give separate consideration to each individual defendant and to each separate charge against him. Each defendant is entitled to have his or her case determined from his or her own conduct and from the evidence [that] may be applicable to him or to her." *Id.* Additionally, "the District Court admonished the jury that opening and closing arguments are not evidence and that it should draw no inferences from a defendant's exercise of the right to silence. *Id.*

Defendant Ozuligbo's Motion for a New Trial (Doc. #179) are **DENIED**.

      **DONE** and **ORDERED** this November 21, 2019.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE