FILED
2021 Aug-17  AM 11:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:18-CR-103-RDP-JEO-1** |
| | } | |
| **PATRICK EMEKA IFEDIBA,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF OPINION AND ORDER

This matter is before the court on third-party Petitioners Anthony Ifediba's (acting as personal representative of the Estate of Benedeth Ifediba), Justina Ozuligbo Ngozi's (as an heir to the Estate), and Lesley Chisom Ifediba's petitions asserting third-party interests in certain properties under 21 U.S.C. § 853(n). (Docs. # 321, 323). Also before the court is the United States' Motion for Summary Judgment with respect to the properties discussed in the petitions. (Doc. # 361). The petitions and motion are fully briefed and ripe for review. (Docs. # 362, 369, 370). After careful consideration, and for the reasons discussed below, the United States' Motion (Doc. # 361) is due to be granted and the other petitions (Doc. # 321, 323) are due to be denied.

## II.     Factual Background[1]

On July 16, 2019, a jury found Defendant Dr. Patrick Ifediba guilty on forty-four (44) counts of conspiracy to commit money laundering, concealing money laundering, engaging in monetary transactions with property derived from specified unlawful activity, conspiracy to

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of Plaintiff. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. To the extent that Petitioners rely on allegations unsupported by the record or fail to support its factual assertions by pointing to the record, the court excludes such allegations from its consideration on the United States' Motion. *See Doe v. Drummond Co.*, 782 F.3d 576, 604 (11th Cir. 2015).

illegally distribute controlled substances, illegal distribution of controlled substances, maintaining drug-involved premises, and health care-fraud and conspiracy.[2] (Doc. # 173). On August 24, 2020, the court issued a forfeiture order extinguishing Defendant's interest in several properties, including the contents of two annuities and interests in two parcels of real property contested in the petitions.[3] (Doc. # 291). The court found (and it is undisputed) that the properties (1) were used in connection and (2) were associated with Defendant's crimes and that he forfeited his interest to the United States.[4] (*Id.*).

Defendant's mother, Benedeth Ifediba, passed away on October 13, 2016. (Doc. # 323 at 1). Anthony Ifediba acts as the personal representative of the decedent's estate. (*Id.*). Following the court's forfeiture order, on October 14, 2020 and October 15, 2020, Petitioners filed petitions pursuant to 21 U.S.C. § 853(n) on behalf of individuals and the Estate asserting claims to two annuities and two parcels of real estate in the court's forfeiture order. (Docs. # 321, 323). Petitioners contend that their "interest, title, and claim" would have "matured on the death of their mother." (Doc. # 323 at 1-2).

Happy Monica LLC is an Alabama limited liability corporation founded on March 8, 2010. (Doc. # 172-180). Happy Monica LLC's articles of incorporation list Benedeth Ifediba as its agent, initial member, and manager. (*Id.*). In 2010, Defendant and Uchenna Ifediba sold property located

---

[2] *See* 18 U.S.C. § 1956(h), 18 U.S.C. § 1956(a)(1)(B)(i), 18 U.S.C. § 1957, 21 U.S.C. § § 846, 841(a)(1) & (b)(1)(C), 21 U.S.C. § 856(a)(1), 18 U.S.C. § 1349, and 18 U.S.C. § 1347. (Doc. # 291).

[3] The assets addressed in that Order (Doc. # 291) and in contest here are the Lincoln National Life Insurance Company Choice Plus Variable Annuity ("Lincoln 0149"), the contents described in the Protective Life Insurance Protective Variable Annuity Investor Series contract ("Protective 1519"), the real property located at 1300 Bessemer Road, Birmingham, Alabama 35208, and the real property located at 2020 5th Avenue, South, Unit 335, Birmingham Alabama 35223.

[4] To the extent that Petitioners attempt to challenge the court's findings that the properties were used in connection with Defendant's crimes, the Petitioners cannot "relitigate the merits of a forfeitability determination." *United States v. Davenport*, 668 F.3d 1316, 1321 (11th Cir. 2012). Thus, the only issue here are facts regarding Petitioners' interests.

at 1300 Bessemer Road to Happy Monica LLC and they executed a warranty deed granting title to Happy Monica LLC. (Doc. # 276-1). In Benedeth's 2014 tax returns, she claimed income from "Rental Real Estate Property" at "1300 Bessemer Rd." (369-1 at 2, 7). Anthony states that Benedeth "did not know or have the capability to understand any of the alleged criminal activity of" Defendant. (Doc. # 369-2 at 3).

Benedeth granted Defendant power of attorney on May 27, 2014. (Docs. # 361-14 at 24-28; 172-212 at 1-4). In December 2014, Defendant purchased Lincoln 0149 for $500,000 with a check he signed. (Doc. # 172-212 at 1). Benedeth was listed as the contract owner and Defendant was listed as the annuitant and beneficiary. (*Id*. at 2). On the same day he purchased Lincoln 0149, Defendant signed an indemnification agreement and affidavit regarding his power of attorney over Benedeth's investments. (Doc. # 361-14 at 28).

In January 2015, Defendant purchased Protective 1519 with three separate payments. (Doc. # 361-5; 361-14; 361-15). Similar to Lincoln 0149, Defendant listed Benedeth as the owner and himself as the annuitant and beneficiary. (Doc. # 172-212 at 5, 20, 24, 34, 38). According to the executed power of attorney, Defendant signed for Benedeth. (Doc. # 172-212 at 24). Prior to her death, Benedeth has "se[vere] medical problems," including a stroke, brain injury, seizures, and "[h]ypertensive [e]mergency." (Doc. # 369-2 at 3).

The parties agreed on a discovery and briefing schedule for these ancillary proceedings. (Doc. # 356). After the discovery period closed, the United States filed its motion under Federal Rule of Civil Procedure 56 and Rule of Criminal Procedure 32.2(c)(1)(B) asking the court to enter summary judgment with respect to the disputed properties. (Doc. # 362).

### III.    Standard of Review

Any third party to a criminal action may assert a legal interest in property which has been ordered forfeited to the United States through ancillary proceedings under 21 U.S.C. § 853(n) and Fed. R. Crim P. 32.2(c). *See United States v. Cone*, 627 F.3d 1356, 1358 (11th Cir. 2010); *United States v. Ramunno*, 599 F.3d 1269, 1273 (11th Cir. 2010). After discovery closes,[5] a party may move for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Crim. P 32.2(c)(1)(B); *see Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004).

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying the portions of the pleadings or filings that demonstrate the absence of a genuine issue of material fact. *Id.* at 323.

Once the moving party has met its burden with a "properly supported motion for summary judgment," Rule 56 requires the non-moving party to go beyond the pleadings -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). Rule 56(c) does not allow a plaintiff to simply rest on the allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must provide at least some evidence to support each element essential to his case at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

---

[5] The government can move before discovery to dismiss the third party for "lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A).

The substantive law determines which facts are material. *See id.* 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

 "[A]t the summary judgment stage the judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (quoting *id.* at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

As to issues on which the nonmovant would bear the burden of proof at trial, the Eleventh Circuit interprets *Celotex* as follows:

> [a] moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show [ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1115 (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). And, where the moving party has met this initial burden by showing that there is an absence of evidence supporting the nonmoving party's case, the nonmoving party must

respond in one of two ways. First, he or she may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was "overlooked or ignored" by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence. Second, he or she may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

*Id.* (internal citations omitted).

## IV.    Analysis

The United States argues that Petitioners lack "statutory standing" to challenge forfeiture because they do not have a "legal interest" in the contested property as required under 21 U.S.C. § 853(n)(2). (*See* Doc. # 362). Alternately, the United States contends that even if Petitioners did have standing, their claims fail to satisfy the requirements to amend the court's forfeiture order under § 853(n)(6).[6] (*Id.*). Of course, if a party does not have standing, a court need not evaluate the claims on the merits. *United States v. Ramunno*, 599 F.3d 1269, 1272 (11th Cir. 2010) (holding that the "inquiry ends" with respect to (n)(6) determination if the petitioner does not have a legal interest); *United States v. Weiss*, 467 F.3d 1300, 1308 (11th Cir. 2006) (stating that courts cannot "consider claims" without Article III standing).

In response, Petitioners argue that, under 21 U.S.C. § 853(n)(2), they have standing to challenge the forfeiture of the real property and annuities because Benedeth had an interest in the properties. Further, Petitioners argue that its interests satisfy the requirements under § 853(n)(6).

After careful review, the court concludes the United States is due summary judgment because Petitioners' lack standing to challenge the court's forfeiture order of the disputed property. Accordingly, the petitions are due to be dismissed.

---

[6] Section 853(n)(6) states that a court may amend its forfeiture order only after finding that a petitioner's legal interest is either "superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property" or that Petitioner "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(A)-(B).

### A.      Real Estate

Petitioners must show that they have a "legal interest" in the real property at 1300 Bessemer under § 853(n)(2). They contend they do because Benedeth was the "sole member, the initial member, organizer, and manager of Happy Monica LLC." (Docs. # 369 at 5; 172-180 at 1). State law determines who has a legal interest in property. *United State v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007); *see United States v. Morales*, 36 F. Supp. 3d 1276, 1285 (M.D. Fla. 2014). Alabama law provides that an Alabama LLC member "has no interest in any specific property of" an LLC. *See* Ala. Code § 10A-5A-4.02. Thus, without a legal interest in property owned by an LLC, an LLC member lacks standing to contest forfeiture of that property. *United States v. Couch*, No. 15-0088-CF-B, 2017 WL 4105769, at *2 (S.D. Ala. Sept. 15, 2017) ("Established case law has made clear that shareholders of a corporation and members of an LLC do not have standing to challenge the forfeiture of the entity's assets ... Individual members of a limited liability company have no individual vested rights in and to property owned by a limited liability company." (internal citations omitted)); *United States v. Magness*, 125 F. Supp. 3d 447, 449 (W.D.N.Y. 2015) (fifty-percent owner of LLC lacked standing to file a claim contesting the forfeiture of half the LLC's assets).

In 2010, Defendants granted title of 1300 Bessemer Road to Happy Monica, LLC. (Doc. # 276-1). So, it is undisputed that Happy Monica LLC holds legal title to 1300 Bessemer Road Property, not Benedeth. (Doc. # 369 at 5). Because Benedeth was the sole member, officer, organizer and manager of Happy Monica LLC, the Petitioners' interest ends (at most[7]) at Benedeth's interest in Happy Monica LLC. (Doc. # 362, 369 at 5, 10).

---

[7] Petitioners assert that *their* "interest, title, and claim" would have "matured on the death of their mother." (*Id.* at 1-2). In other words, they have not asserted what *her* interests were before she passed.

The only other fact in the record that Petitioners assert supporting their argument that they have a legal interest in 1300 Bessemer is that Benedeth's tax returns indicate that she received rental income from the property. (Doc. # 369-1 at 1-2). But, this fact has no legal significance. Alabama law states that the tax status of an LLC "shall not affect its status as a separate legal entity." Ala Code § 10-5A-1.04. In other words, whether an LLC member claims income related to the LLC does not alter the fact that an LLC maintains its property as a distinct entity. Petitioners have not provided any legal authority or factual support to the contrary. That Benedeth claimed taxes on income from the LLC does not mean that she had a legal interest in that property under Alabama law. Thus, summary judgment is due to be granted because Petitioners lack statutory standing to assert their claims. *See Anderson*, 477 U.S. at 249.

Similarly, Petitioner Lesley Ifediba alleges that the property at 2020 5th Avenue South has been her "primary residence" since June 26, 2015 and that she has "invested some of her own money in the purchase" of the property. (*See* Doc. # 323 at 2). But, Lesley does not provide any factual support for her assertion. Fed. R. Civ. P 56(e); *see Fitzpatrick*, 2 F.3d at 1115. Indeed, there are no facts in the record to support her assertion that she has a legal interest in the real property. Thus, summary judgment is due to be entered with respect to the claim involving 2020 5th Avenue South.

**B.     Annuities**

The Government argues that Petitioners' claims with respect to the annuities at issue fail because Petitioners do not have a cognizable legal interest necessary to satisfy § 853(n)(2). (Doc. # 362 at 22-24). The United States also argues that, even if Petitioners do have standing, their claims to the annuities fail on the merits. (*Id*. at 24-33).

8

Petitioners assert they have a legal interest based on the fact that Benedeth was named as the owner of the annuities.[8] (Doc. # 321 at 1). However, being the named owner of the policy is insufficient to establish standing. *See United States v. $515,060.42*, 152 F.3d 491, 498 n.6 (6th Cir. 1998) ("[B]are legal title, in the absence of assertions of dominion, control or some other indicia of ownership of or interest in the seized property, is insufficient to confer standing to challenge a forfeiture.").

Further, "straw owners and persons who might have unknowingly been in possession of property that is seized do not necessarily suffer an injury that is sufficient to demonstrate standing." *United States v. Henry*, 621 F. App'x 968, 972 (11th Cir. 2015) (internal citations and quotation marks omitted). As the United States correctly argues, the record establishes that Benedeth was unaware of her ownership of the annuities. Defendant purchased the annuities, made himself the annuitant and beneficiary, and even exercised power of attorney over the accounts to the extent that Benedeth was involved at all. (Docs. # 361-14 at 24-28, 24, 34, 38; 172-212 at 1-4; 361-15). Petitioners do not put forth any facts in response to show a dispute regarding Benedeth's involvement in the annuities.[9]

---

[8] Petitioners do not specify whether they are arguing that this fact establishes Article III standing, satisfies the requirements of § 853(n)(2), or meets the requirements of § 853(n)(6).

[9] If the court were to reach the merits of Petitioners' claim (and, to be clear, it does not), it doubts the veracity of their claims. For example, there are no Rule 56 facts establishing that Benedeth was a bona fide purchaser or had a superior interest than Defendant. *See, e.g.*, *United States v. Akhtar*, 2017 WL 4778732, at *4 (E.D. Mich. Oct. 23, 2017) ("Petitioner's assertion that she is the true owner of the cash is similarly insufficient to establish superior title"), *aff'd*, 2018 WL 5883930 (6th Cir. Sept. 19, 2018). Indeed, Petitioners contend (albeit inconsistently) that their interest materialized when she Benedeth passed away on October 14, 2016, which was over three years after Defendant began his criminal activity. *See* 21 U.S.C. § 853(c); *United States v. Eldick*, 223 F. App'x 837, 840-41 (11th Cir. 2007) ("Thus, the government's interest will be superior to that of anyone whose interest does not antedate the crime.").

**V.      Conclusion**

Because there are no facts in the Rule 56 record establishing that Petitioners have standing to contest the court's forfeiture order, their petitions (Docs. # 321, 323) are **DISMISSED** in all Defendants' actions and the United States' Motion for Summary Judgment (Doc. # 361) is **GRANTED** in all Defendants' actions.

**DONE** and **ORDERED** this August 17, 2021.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE